UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-22227-CIV-ALTONAGA/Damian

**KING OCEAN SERVICES, LTD.**,

    Plaintiff/Counter-Defendant,

v.

**CI MISTIC SAS FRUITS AND VEGETABLES, LLC**,

    Defendant/Counter-Plaintiff.

_____/

**ORDER**

    **THIS CAUSE** came before the Court on Plaintiff/Counter-Defendant, King Ocean Services, Ltd.'s Motion to Dismiss Counterclaim [ECF No. 13]. Defendant/Counter-Plaintiff, CI Mistic SAS Fruits and Vegetables, LLC filed a Response [ECF No. 26]; to which King Ocean filed a Reply [ECF No. 27]. The Court has carefully considered CI Mistic's Answer, Affirmative Defenses, and Counterclaim ("Counterclaim") [ECF No. 8] and its attachments; the parties' written submissions; and applicable law. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

    King Ocean is a vessel operating common carrier that provides maritime services and cargo transportation between ports in Florida and Central and South America, as well as the Caribbean Basin. (*See* Countercl. ¶ 4). CI Mistic is in the business of importing and distributing produce. (*See id.* ¶ 5). On June 15, 2023, King Ocean filed a Complaint [ECF No. 1], asserting one count of breach of contract based on CI Mistic's failure to "compensate [Plaintiff] for the ocean freight

and related charges" arising from various shipments King Ocean completed for CI Mistic from August 2022 through March 2023. (Compl. ¶¶ 16–18 (alteration added)).

CI Mistic asserts counterclaims based on two specific shipments from Colombia to Florida for which it contracted King Ocean to be its common carrier. (*See generally* Countercl.). The first shipment ("Container 1") held "1080 Boxes of Plantains" that "were in good condition" when delivered to King Ocean's custody for transportation on January 13, 2023. (*Id.* ¶ 11). The plantains were damaged while in King Ocean's custody and "not delivered to CI Mistic in the same good condition as when King Ocean received them." (*Id.* ¶ 12). When Container 1 was delivered on January 24, 2023, the plantains "were of such a condition they could not be used for their intended purpose." (*Id.* ¶ 14). The same allegedly occurred with the second shipment ("Container 2") of 1080 boxes of plantains, which King Ocean received for transportation around late January 2023 and delivered in early February 2023. (*See id.* ¶¶ 16–20).

Containers 1 and 2 were shipped under separate contracts of carriage, and King Ocean "issued clean bills of lading" for both shipments. (*Id.* ¶¶ 24–25). In both bills of lading the parties agreed to extend the provisions of the Carriage of Goods by Sea Act ("COGSA") to their business transaction as follows:

> This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of 1936 of the United States of America, as amended ("COGSA"), which shall apply to the Goods whether carried on or under deck, to carriage of the Goods to, from or between U.S. ports, or between non-U.S. ports, before the Goods are loaded on and after they are discharged from the vessel, and throughout the entire time the Goods are in custody of Carrier, whether acting as carrier, bailee, terminal operator, inland carrier, stevedore. Carrier shall be entitled to any and all defenses and limitations on liability provided under COGSA and any other compulsorily applicable law for any and all claims arising out of Carrier's custody or control of the Goods. Carrier shall also be entitled to any and all defenses and limitations provided in Carrier's contracts with underlying water or land carriers and all such limitations and defenses are incorporated herein by reference.

(Compl., Ex. C, Bill of Lading Terms & Conditions [ECF No. 1-3] 3).[1]

The Counterclaim asserts four causes of action: damage to cargo under COGSA ("Count I"), damage to cargo under the Harter Act ("Count II"), breach of warranties and nondelegable cargo worthiness duties ("Count III"), and negligence ("Count IV"). (*See* Countercl. ¶¶ 22–48). CI Mistic also asserts a set-off affirmative defense, alleging any claim is "offset by monies owed Defendant for damages caused by failing to deliver undamaged cargo." (*Id.* 4). King Ocean seeks dismissal of the Counterclaim as a whole, or alternatively, dismissal of Counts II, III, and IV; and it also contests the validity of the set-off defense. (*See generally* Mot.)

## II. LEGAL STANDARD

"A motion to dismiss a counterclaim under [Federal] Rule [of Civil Procedure] 12(b)(6) is treated the same as a motion to dismiss a complaint." *Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308 (S.D. Fla. 2001) (alterations added; citation omitted). "To survive a motion to dismiss [under Rule 12(b)(6)], a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alterations added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "A [counterclaim] is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

alleged." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (alteration added; citing *Iqbal*, 556 U.S. at 678).

Courts evaluating motions to dismiss under Rule 12(b)(6) must construe the counterclaim in the light most favorable to the plaintiff/counter-defendant and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)). In addressing a Rule 12(b)(6) motion, a court considers the allegations of the counterclaim and exhibits attached to or incorporated by reference into the counterclaim. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

### III. DISCUSSION

King Ocean makes four arguments: (1) the Counterclaim is a shotgun pleading that comingles causes of action; (2) COGSA preempts Counts II through IV; (3) CI Mistic is not entitled to set-off damages; and (4) the Counterclaim is permissive. (*See generally* Mot.). The Court addresses each in turn.

#### A.   **Shotgun Pleading**

King Ocean argues that the Counterclaim should be dismissed because it is a shotgun pleading that improperly combines claims from both shipments into the same Counts, making it so each Count presents two claims, in violation of Federal Rule of Civil Procedure 10(b). (*See id.* 9–11). According to CI Mistic, its Counterclaim provides sufficient notice of the claims asserted; alternatively, it seeks leave to amend should the Court disagree. (*See* Resp. 3).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified "four rough types or categories of shotgun pleadings." *Id.* at 1321. At issue here is the third category (*see* Mot. 9–11) — a pleading

4

"that commits the sin of not separating into a different count each cause of action or claim for relief[,]" *Weiland*, 792 F.3d at 1323 (alteration added; footnote call number omitted).

The Counterclaim commits no such sin. While the damaged cargo claims are based on two separate shipments, the Court is not convinced the Counterclaim runs afoul of *Weiland*. *See* 792 F.3d at 1331 n.3 (collecting examples of the third category of shotgun pleadings that contained "untold causes of action, all bunched together in one count" and were "framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts" (quotation marks and citations omitted)). The shipments of Containers 1 and 2 involve identical parties, and CI Mistic alleges breaches under identical legal theories. (*See generally* Countercl.). Indeed, as King Ocean concedes, the "standard terms and conditions of the bills of lading terms are the same" for both shipments. (Mot. 10).[2]

Further still, the thorough Motion is itself evidence that the Counterclaim is clear enough to provide King Ocean the bases for raising multiple grounds for dismissal. (*See generally id.*). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 892 F.3d at 1323 (footnote call number omitted). At bottom, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each [cause of action.]" *Id.* at 1324 (alteration added).

---

[2] It is worth noting that King Ocean is the proverbial pot calling the kettle black, considering, as CI Mistic notes (*see* Mot. 3), King Ocean's single breach-of-contract claim alleges a failure to pay freight charges due under *multiple* bills of lading. (*See generally* Compl.).

### B.     COGSA Preemption of Counts II, III, and IV

Next, King Ocean argues the Harter Act and common-law claims are preempted by COGSA. (*See* Mot. 11–14). CI Mistic concedes that if its COGSA claim survives dismissal, "COGSA would preempt the remaining [C]ounts." (Resp. 3–4 (alteration added)).

"COGSA, when it applies, supersedes other laws" and "provide[s] an exclusive remedy" for lost or damaged goods. *Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co., Ltd.*, 215 F.3d 1217, 1220 (11th Cir. 2000) (alteration added) (finding COGSA preempted a plaintiff's bailment and negligence claims arising from a carrier losing goods while at sea). Although "COGSA governs bills of lading for the carriage of goods 'from the time when the goods are loaded onto the time when they are discharged from the ship[,]'" parties may extend COGSA's application by contract. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 29 (2004) (alteration added; quoting 46 U.S.C. § 1301(e)) (upholding extension of COGSA's coverage to "the entire period in which the [goods were] under [the carrier's] responsibility" (alterations added)).

Here, the parties agreed to extend COGSA coverage to include:

> Goods whether carried on or under deck, to carriage of the Goods to, from or between U.S. ports, or between non-U.S. ports, before the Goods are loaded on and after they are discharged from the vessel, and throughout the entire time the Goods are in custody of Carrier, whether acting as carrier, bailee, terminal operator, inland carrier, stevedore.

(Bill of Lading Terms & Conditions 3). The parties agree COGSA applies to CI Mistic's claims (*see* Mot. 13; Resp. 3–4), and CI Mistic admittedly alleges Counts II, III, and IV as "alternative[s] to a COGSA claim" (Countercl. ¶¶ 30, 38, 44 (alteration added). Given the parties' uncontested agreement to be bound by COGSA under the bills of lading; extension of COGSA to apply throughout the entire time the goods were in King Ocean's custody; and since neither party contests COGSA's applicability to both shipments, Counts II, III, and IV are dismissed.

### C. Set-Off Defense

King Ocean next argues CI Mistic cannot rely on damaged cargo to offset King Ocean's freight charges. (*See* Mot. 14). Beyond making this point, King Ocean fails to ask for any relief. (*See id.*). The Court construes this portion of the Motion as a motion to strike the set-off defense under Federal Rule of Civil Procedure 12(f) and agrees with King Ocean on this point.[3]

"It is a well-established and ancient rule that 'once the goods have been carried to their destination and are ready for delivery, the freight must be paid even though the goods are damaged or deteriorating. This undertaking in the charter is an independent obligation and is not discharged because of failure to deliver the cargo in good condition.'" *King Ocean Central Am., S.A. v. Angel Food & Fruit Co.*, No. 95-0568-Civ, 1995 WL 819141, at *3 (S.D. Fla. Oct. 12, 1995) (quoting *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 281 (2nd Cir. 1986); other citations omitted) (collecting cases and holding a defendant bringing a damaged cargo claim was not entitled to set off against unpaid freight charges based on damage to its cargo). Consequently, the set-off affirmative defense is stricken.

### D. Permissive Counterclaim

Finally, King Ocean argues the Counterclaim is permissive, as it does not involve "any of the bills of lading at issue in the Complaint[,]" and allowing the Counterclaim to proceed would not advance judicial economy and will "prejudice King Ocean because cargo claims cannot be used to set off freight charges." (Mot. 16 (capitalization omitted)). CI Mistic argues that, regardless of whether its Counterclaims is compulsory or permissive, the Court has subject-matter

---

[3] CI Mistic fails to respond to this argument at all (*see generally* Resp.), and therefore waives any responsive argument it may have had, *see In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." (citations omitted)).

jurisdiction, and, if dismissed, it "would bring its COGSA claims in the Southern District of Florida." (Resp. 4–5). The Court agrees with CI Mistic.

"Even where the addition of counterclaims could prolong the litigation, ultimately, allowing the parties to litigate all of the disputes between them is in the interests of efficiency and justice." *Perez v. Elite Imaging, LLC*, No. 16-cv-24555, 2017 WL 666108, at *2 (S.D. Fla. Feb. 17, 2017) (alteration adopted; quotation marks and citations omitted). The Counterclaim's compulsory or permissive nature is irrelevant here. Even if the undersigned were to dismiss the Counterclaim on this ground, CI Mistic would refile its claim in this District, bringing a needlessly duplicative case involving identical parties, identical transactions occurring during the same time frame, and similar discovery surrounding the shipments of Containers 1 and 2. And the case would likely be transferred to the undersigned and then consolidated with this action.

Nor does the Court find that permitting the Counterclaim to proceed would complicate the litigation, prejudicing King Ocean. Quite the opposite: keeping the parties' claims centralized instead of separate will promote judicial efficiency; minimize duplication of the parties' time and resources and encourage global resolution of all claims between them; and prevent CI Mistic from having to "refile, serve, and relitigate the same issues under a separate case number." (Resp. 6). These considerations are especially persuasive given the parties' claims share some overlapping facts.

### IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff, King Ocean Services, Ltd.'s Motion to Dismiss Counterclaim **[ECF No. 13]** is **GRANTED in part** and **DENIED in part**. Count II,

Count III, and Count IV of CI Mistic's Answer, Affirmative Defenses, and Counterclaim **[ECF No. 8]** are **DISMISSED**. CI Mistic's Second Affirmative Defense is **STRICKEN**.

**DONE AND ORDERED** in Miami, Florida, this 28th day of November, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record